**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| **ERIC SELF, individually and on behalf of the heirs-at-law of VICKI B. SELF, deceased,**<br><br>　　　　　　**Plaintiff,**<br><br>**v.**<br><br>**JOHN R. UHL and GEORGE UHL,**<br><br>　　　　　　**Defendants.** | **Case No. 16-cv-04088-DDC-KGS** |

<u>**MEMORANDUM AND ORDER**</u>

　　　　Plaintiff Eric Self brought this action against defendants John and George Uhl under the Kansas Wrongful Death Act, Kan. Stat. Ann. §§ 60-1901–1906, to recover for the wrongful death of his mother, Vicki B. Self. On April 17, 2017, the parties informed the court that they had settled the case. As the Kansas Wrongful Death Act requires, the court conducted a settlement apportionment hearing on May 4, 2017. Doc. 34. At the hearing's conclusion, the court took the matter under advisement. After reviewing the evidence presented at the hearing and the parties' submissions, the court is prepared to rule.

**I.　　Findings of Fact**

　　　　On June 12, 2014 around 9:30pm, Vicki Self was riding in the front passenger seat of a Chevy TBZ and wearing her seatbelt as her husband, John, drove the car down U.S. Highway 75 in Jackson County. As they approached the intersection of Highway 75 and 246th County Road, they suddenly noticed a large, dark animal standing in the road. John did not have sufficient time or distance to avoid hitting the animal, which turned out to be a horse. When John hit the horse, it flew up into the windshield and struck Vicki. She died on the scene. John survived.

John originally retained counsel to pursue an action for his wife's death. He became dissatisfied with his initial counsel and retained new representation. This new counsel then referred John to Ralston, Pope, and Diehl, LLC. John Self first came to Ralston, Pope, and Diehl, LLC in March 2015 but the firm did not agree to take the case right away, and so John Self did not sign a fee agreement, until May 2015.

At first, Ralston, Pope, and Diehl, LLC investigated the possibility of filing a claim against the airbag or vehicle manufacturer because the airbag on Mrs. Self's side of the vehicle did not deploy during the accident. Finding this claim unlikely to succeed, Ron Pope of Ralston, Pope, and Diehl, LLC, identified and investigated the possibility of filing a claim against John and George Uhl under the Kansas Wrongful Death Act ("the Act") because John Uhl owned the horse that killed Mrs. Self and kept it on property owned by his father, George Uhl. Mr. Pope advised John to pursue an action under the Act, and to name Eric Self, Vicki's adult son who resides in California, as the plaintiff in the case. John and Eric Self consented. Eric signed a fee agreement with Ralston, Pope, and Diehl, LLC on April 6, 2016. In the fee agreement, Eric agreed to pay the firm a 40% contingency fee if the case settled before a petition or complaint was filed, and to pay a 45% contingency fee of any recovery obtained after a petition or complaint was filed.

Eric filed this lawsuit on June 9, 2016. Doc. 1. In the Complaint, Eric alleges that John and George Uhl caused the wrongful death of his mother by failing to maintain the fencing that corralled the horse. Defendants' insurance carrier denied coverage for the accident twice before settling the case for policy limits. Because a coverage dispute arose, Mr. Pope and his firm expended considerable time researching Kansas livestock, fencing, and insurance law, recreating the crash, and investigating the facts of the case. The firm also set aside $100,000 in its

operating fund in contemplation of this case going to trial. Although Mr. Pope's firm does not keep time records, the firm's records for this case report 618 "contacts with work" and 483 emails and/or "phone calls of significance." Mr. Pope explained that the term "contacts with work" represents review and preparation of documents in the case, and that the term "phone calls of significance" represents a phone conversation that either was recorded or was one where facts or other case information was discussed.

Eventually, the parties settled the case for policy limits and asked the court to apportion the settlement proceeds among Mrs. Self's heirs. At the time of her death, Mrs. Self had only three surviving heirs: plaintiff, her son; John Self, her husband; and Christy Rackley, her daughter. In their settlement agreement, the parties propose that the three heirs split the settlement proceeds equally after subtracting $4,933.30 in costs and Ralston, Pope, and Diehl, LLC's 40% contingency fee. All three heirs signed the settlement agreement.

## II.    Analysis

"A federal court sitting in diversity must apply the substantive law of the state in which it sits, in this instance, the state of Kansas." *Turman v. Ameritruck Refrigerated Trans., Inc.*, 125 F. Supp. 2d 444, 446 (D. Kan. 2000) (citation omitted). "The method of distributing the amount recovered in a wrongful death action 'depends upon the law of the state which, by its wrongful death statute, creates the cause of action.'" *Id.* at 446–47 (citing *Kent v. Kan. Power & Light Co.*, 123 F. Supp. 662, 664 (D. Kan. 1954)). Here, plaintiff brought his claims under the Kansas Wrongful Death Act. So, the court applies Kansas law.

Kansas law requires the court to apportion any recovery in a wrongful death case after conducting a hearing. Kan. Stat. Ann. § 60-1905. When apportioning the recovery, the court first allows costs and reasonable attorney's fees for plaintiff's counsel then apportions the

remaining recovery among the decedent's heirs in proportion to the loss sustained by each one. *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each").

So, the court first subtracts $4,933.30 in costs. Next, the court considers whether Ralston, Pope, and Diehl's requested 40% contingency fee is reasonable. Only then does the court apportion the net settlement proceeds.

### A. Attorney Fees

Because the court has a duty to ensure that the requested attorney's fee award is reasonable, it considers the request under the eight factors set forth in Kansas Rule of Professional Conduct 1.5(a).[1] *See Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999) (explaining that the court considers the Kan. R. Prof'l Conduct 1.5(a) factors when deciding whether a requested § 60-1905 attorney-fee award is reasonable); *Johnson v. Westhoff Sand Co.*, 135 P.3d 1127, 1135 (Kan. 2006) ("In determining the reasonableness of an attorney fee . . . the factors in Rule 1.5(a) of the Kansas Rules of Professional Conduct should be considered." (citations omitted)). As shorthand, the court refers to the factors as "KRPC 1.5(a) factors." Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or

---

[1] At the May 4, 2017 hearing, plaintiff's counsel raised an interesting point: Does Kan. Stat. Ann. § 60-1905 require court approval of attorney fees when fees are not contested? The court has not found Kansas Supreme Court authority squarely addressing this question, but the Kansas Court of Appeals has noted that "K.S.A. 60-1905 requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh*, 973 P.2d at 207. This statement, as well as § 60-1905's use of the phrase "after the allowance by the judge of . . . reasonable attorneys fees," leads the court to conclude that the Kansas Supreme Court would hold that the approving court indeed must determine a reasonable attorney fee in all Kansas Wrongful Death Act cases.

by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Kan. R. Prof'l Conduct 1.5(a). "The district court itself is an expert in the area of attorney fees and can draw upon and apply its own knowledge and expertise in determining their value." *Ortiz v. Biscanin*, 122 P.3d 365, 383 (Kan. Ct. App. 2004), as corrected (Nov. 28, 2005). Several of these factors do not influence the court's decision here, but factors one, three, four, seven, and eight do affect its decision.

### 1. Time, Labor, Novelty, Difficulty, and Skill Required

Counsel did not keep hours, which is an acceptable practice. *See id.* at 384 (finding time records not required where the district court has "ample evidence to draw upon in determining a reasonable fee"). But, counsel has provided the court with some sense of the time and labor that counsel devoted to the case. Counsel recorded 618 "contacts with work" and received or participated in 483 emails or "phone calls of significance." For a case where the parties filed no dispositive motions, counsel's "contacts with work" data indicates that counsel invested a considerable amount of time and effort getting the case to settlement. And, counsel's "phone calls of significance" and email number—which does not include all emails and phone calls in the case—further supports this conclusion.

Also, the labor required to get this case into a position where a complaint could be filed was significant. Counsel first investigated whether the airbags on Mrs. Self's side of the car were faulty, since they did not deploy during the crash. This investigation followed two tracks: one, asking whether the air bags came from a well-known defective batch; and two, asking whether the air bags should have deployed at all. When the answer to both questions was no, counsel investigated other potential sources of liability. This is when he realized that defendants

may have maintained the fencing that corralled the horse negligently. Counsel pursued this idea, and found that it had merit. This process required a substantial amount of time and labor. Counsel and his firm interviewed neighbors, reconstructed the accident, and inspected the property and fencing. He ultimately discovered that the component that makes an electric fence useful—called the charger—had been replaced since the accident and the old one was nowhere to be found. This investigative work combined with counsel's reported "contacts with work" and emails and "phone calls of significance" shows that counsel invested substantial time and labor into the case.

This case also presented difficult and uncommon issues that required skill to navigate successfully. Counsel had to develop the interplay between traditional tort concepts like liability and causation and Kansas statutory law regulating livestock and fencing. Also, serious questions about insurance coverage existed in the case, as shown by defendants' insurers denying coverage for this case twice. Counsel also raised questions about destruction of evidence, based on the electric fence's missing old charger.

The first KRPC 1.5(a) factor thus counsels in favor of granting counsel's fee request.

### 2. *Customary Fee*

This factor causes the court some concern. Though counsel submitted nine affidavits from leading plaintiff attorneys who testified that a 40% contingency fee is usual and customary for personal injury cases, our court's case law typically considers a 30% to 35% contingency fee customary and reasonable in cases similar to this one. *See, e.g.*, *Dudley v. Gagne*, No. 05-2030-JAR, 2006 WL 314347, at *2 (D. Kan. Feb. 3, 2006) (finding that the attorney's one-third contingency fee with the plaintiff was reasonable); *Turman v. Ameritruck Refrigerated Trans., Inc.*, 125 F. Supp. 2d 444, 448 (D. Kan. 2000) (finding that "a one-third contingency fee is not

uncommon in wrongful death actions").  Our court, however, has approved attorney's fee awards of 40% in wrongful death and other, similar cases in the past.  Transcript of Settlement Hearing, *Barragan v. St. Catherine Hosp.*, No. 02-cv-02433-CM-DJW, ECF No. 133 at 38 (D. Kan. Aug. 30, 2004) (finding 40% a reasonable fee in a medical malpractice case involving a minor where the total settlement value was $4.3 million, plaintiff's counsel had invested more than $90,000 and three years in the case, and had had to hire experts to controvert the defendant's experts on economic damages); Order Approving Wrongful Death Settlement and Apportionment, *Cowan v. Gen. Motors Corp.*, No. 06-133-MLB, ECF No. 48 at 2 (D. Kan. Dec. 4, 2007) (approving 40% attorney fee award in a wrongful death case).  And, other courts in our area, including the Kansas Supreme Court, have approved attorney's fees of 40% or thereabouts in similar cases. *See, e.g.*, *Hawkins v. Dennis*, 905 P.2d 678, 692 (Kan. 1995) (granting attorney's fees of 40% in a personal injury and garnishment action); *Tobin v. Jerry*, 243 S.W.3d 437, 443 (Mo. Ct. App. 2007) (finding a 40% contingency fee reasonable for a legal malpractice action); *Risjord v. Lewis*, 987 S.W.2d 403, 405 (Mo. Ct. App. 1999) (reciting that a Missouri trial court had approved an attorney's fee award of about 39.7% of a personal-injury plaintiff's gross settlement recovery).[2]

Given this authority and the affidavits provided by counsel, the court concludes that a 40% fee, though on the high end, is within the range that attorneys in the area charge for similar work.  Factor three thus favors granting counsel's fee request, albeit just slightly.

---

[2] *See also Sanderford v. Malley*, No. 14-2165-RDR, 2015 WL 1423157, at *5 n.11 (D. Kan. Mar. 27, 2015) ("Plaintiff's counsel states that lawyers from the Kansas City area customarily charge a 40–percent contingency fee."); Lee Harris & Jennifer Longo, *Flexible Tort Reform*, 29 Hamline J. Pub. L. & Pol'y 61, 79–80 (2007) ("As a result of this assumption of risk, a personal injury lawyer typically takes thirty-three to forty percent of any award or settlement."  (footnote omitted)).

### 3.     Results Obtained

Counsel obtained the best results possible under the circumstances.  Mrs. Self worked as an executive for Payless Shoe Source earning six figures per year.  So, the economic losses in this case easily could amounted to millions of dollars.  Recovering so large an amount, however, was unlikely.  Early in the litigation, Mr. Pope and his firm investigated whether either defendant had assets sufficient to cover a large verdict and determined that neither did.  But, both defendants carried insurance policies that certain claims may have implicated.  The case settled for policy limits under both John and George's policies.  Counsel thus achieved the best monetary result possible in this case.  Factor four thus favors granting counsel's fee request.

### 4.     Experience, Reputation, and Ability of Counsel

Mr. Pope performed the lion's share of the legal services in this case, and he certainly is known as an accomplished plaintiff's attorney in Kansas.  Mr. Pope has guided some 100 jury trials to a verdict, resolved more than 1,000 complex litigation cases, and is AV rated by Martindell-Hubbell.  In 2012, Mr. Pope was recognized by Best Lawyers as a Lawyer of the Year for his personal injury practice.  Mr. Pope received the same recognition in 2017.  Also, he consistently has been named one of the Top 100 lawyers in Kansas and as one of the best lawyers in America for personal injury.  These recognitions, combined with Mr. Pope's successful resolution of this case, convince the court that Mr. Pope's experience, reputation, and ability warrant favorable consideration.  Factor seven thus favors granting counsel's fee request.

### 5.     Fixed or Contingent Fee

How Kansas law applies this eighth and final KRPC 1.5(a) factor is not quite clear.  A few things are clear, however.  First, Kansas courts may consider the terms of a contingency fee agreement when determining a reasonable fee under KRPC 1.5(a), but "the contingent fee agreement cannot be the sole factor considered."  *Johnson*, 135 P.3d at 1140.  Second, a

contingency fee agreement does not provide the starting point for the court's inquiry under KPRC 1.5(a). *See id.* at syl. ¶ 8 ("There is no presumption that a contingent fee agreement approved by a court establishes a reasonable sum to be awarded under K.S.A. 40-256."); *see also id.* at 1141–42 (rejecting the plaintiff's argument that "the district court should calculate the assessed award using the percentage agreed upon by client and counsel unless the court finds that the KRPC 1.5 factors warrant a reduction in such an amount"). And finally, Kansas courts may consider—or, at least, do consider—the risk of accepting a case on a contingency fee basis when determining a reasonable fee. *See id.* at 1141 (discussing "the high level of risk assumed" by the plaintiff's counsel as one reason why the district court's fee award was reasonable); *see also Miller v. Botwin*, 899 P.2d 1004, 1010 (Kan. 1995) (consider the fact that attorney operating under a contingency fee agreement "bore the sole risk of receiving no fees" when determining whether fee award was reasonable).

Here, Eric Self agreed to a contingency fee arrangement with Ralston, Pope, and Diehl, LLC that provided for a 40% contingency fee if the case settled before a petition or complaint was filed, and a 45% contingency fee after a petition or complaint was filed. Counsel seeks just 40% here, instead of the 45% that his client agreed to. Despite this reduction, the contingency fee agreement provides some minimal evidence of the value of counsel's services in the community. *See Johnson*, 135 P.3d at 1140–41 (affirming district court's fee decision where district court noted that the contingent "fee arrangement [was] some evidence of the value of the attorney services in the community").

Counsel accepted considerable risk of recovering no fee when he agreed to take this case on a contingency basis. As discussed previously, counsel's first theory of liability in this case failed. Then, when counsel developed the present theory of liability, defendants' insurers

declined coverage—twice. Of course, accepting any case on a contingency fee basis is always something of a risky proposition. But this case presented liability and legal issues making it a particularly risky endeavor.

The unique risk posed by accepting this case on a contingency fee basis persuades the court to find the contingency fee agreement's terms of more evidentiary value in this case than the court has found in other cases. Taking both of these facts into consideration, then, the court concludes that factor eight counsels in favor of granting counsel's fee request.

### 6. *Weighing the KRPC 1.5(a) Factors*

In light of the foregoing discussion, the court concludes that good reason exists to find counsel's fee request reasonable. Although several of the factors considered were neutral on the question whether to grant his request, the factors favoring approval of a 40% fee here persuade the court. This case presented a difficult one to litigate through trial, making counsel's willingness to take it on at all, let alone on a contingency fee basis, worth reward. Counsel also supports the fee award with affidavits testifying that the fee is customary for the area, thus diminishing the court's reluctance to find a 40% fee award reasonable. Also, a 40% fee award does not over compensate counsel for what appears to have been a long, complex, and difficult case. Counsel and his firm invested a large amount of time and effort researching and investigating this case, which also diminishes the court's reluctance to find so high a fee award reasonable.

The court thus awards 40% of the gross settlement recovery as plaintiff's attorney fees. In doing so, however, the court cautions future fee applicants. This case presented unique issues, many of which the court does not discuss here. No one should read this Memorandum and Order

as ruling that a 40% contingent fee award is per se reasonable, or even presumptively reasonable. Instead, the reader should conclude only that such an award is reasonable in this case.

### B.     Apportionment of Settlement

Last, the court considers how to apportion the remaining wrongful death settlement proceeds to Mrs. Self's heirs. At the hearing, the court heard testimony from only one of Mrs. Self's heirs, her husband, John Self. The other two heirs did not attend the hearing, but did receive notice of it. During the hearing, John testified about the loss he has sustained from his wife's death. The court did not hear testimony about the loss sustained by either of Mrs. Self's children, but understands it as a substantial one. And, John testified that he and the children discussed the settlement and that they all agreed to the equal apportionment that plaintiff requests. The fact that all three heirs signed the settlement agreement supports John's testimony.

Based on John's testimony and the materials that plaintiff submitted, the court concludes that Mrs. Self's three heirs sustained equal loss from her death and thus are entitled to an equal share of the remaining wrongful death settlement proceeds.

### C.     Conclusion

For the reasons explained above, the court finds a 40% contingency fee reasonable on the facts of this case and apportions the net settlement proceeds equally among Mrs. Self's three heirs. The court thus apportions one-third of the net settlement proceeds to Eric Self, one-third to John Self, and one-third to Christy Rackley.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's oral motion, made during the May 4, 2017 hearing, to approve the parties' proposed apportionment is granted. The court apportions the wrongful death net settlement proceeds according to and consistent with this Memorandum and Order.

**IT IS SO ORDERED.**

**Dated this 24th day of May, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
